**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
--------------------------------------------------------
NICHOLAS LUGO                          :
51 Jefferson Drive                     :      CIVIL ACTION NO.: _____
Clementon, NJ 08021                    :
                                       :      JURY TRIAL DEMANDED
                        Plaintiff,     :
            v.                         :
                                       :
MILLENNIALS WITH NEW                   :
BEGINNINGS LOGISTICS LLC               :
1650 Market St, Ste. 3600              :
Philadelphia, PA 19103                 :
                                       :
                        Defendant.     :
--------------------------------------------------------
```

## COMPLAINT – CIVIL ACTION

Plaintiff, Nicholas Lugo ("Plaintiff"), by and through his undersigned attorney, for his

Complaint against Defendant Millennials with New Beginnings Logistics LLC ("Defendant"),

alleges as follows:

## INTRODUCTION

1.      Plaintiff brings this Complaint contending that Defendant violated his rights under

the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* Pennsylvania Human

Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*, and Philadelphia Fair Practices Ordinance

("PFPO"), Phila. Code §§ 9-1101, *et seq.*, by discriminating against him because of his

disability, past record of disability, and/or because it regarded him as disabled, failing to

reasonably accommodate him, and ultimately terminating him, rescinding his offer of

employment, and/or refusing to hire him because of his disability and in retaliation for his

requests for an accommodation in connection thereto.

## PARTIES

2.      Plaintiff Nicholas Lugo is a citizen of the United States and New Jersey, and currently maintains a residence at 51 Jefferson Drive, Clementon, NJ 08021.

3.      Upon information and belief, Defendant Millennials with New Beginnings Logistics LLC, is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business at 1650 Market St, Ste. 3600, Philadelphia, PA 19103.

4.      At all times relevant hereto, Defendant acted or failed to act through its agents, servants, and/or employees thereto existing, each of whom acted at all times relevant thereto in the course and scope of their employment with and for Defendant.

## JURISDICTION AND VENUE

5.      Paragraphs 1 through 4 are hereby incorporated by reference as though the same were fully set forth at length herein.

6.      General personal jurisdiction over Defendant exists in the Commonwealth of Pennsylvania as a consequence of its registration to do business in Pennsylvania.  See 42 Pa. Cons. Stat. § 5301(a)(2)(i) ("qualification as a foreign corporation" permits Pennsylvania courts to "exercise general personal jurisdiction" over such entities); Mallory v. Norfolk S. Ry., 600 U.S. 122, 143 S. Ct. 2028, 2038-45 (2023).

7.      On or about February 26, 2024, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (the "EEOC"), which was dual-filed with the Pennsylvania Human Relations Commission (the "PHRC"), thereby satisfying the requirements of 42 U.S.C. §§ 12117(a); 2000e-5(b) and (e).  Plaintiff's Charge was docketed as EEOC Charge No. 530-2024-03834.  Plaintiff's Charge was filed within one hundred and eighty (180) days of the unlawful employment practices described herein.

8.    On January 23, 2025, the EEOC issued a Determination of Reasonable Cause in Plaintiff's favor, finding that there was "reasonable cause to believe that Respondent failed to provide a reasonable accommodation [to Plaintiff] based on his disability in violation of the ADA and failed to hire him as a result."

9.    By correspondence dated May 13, 2025, the EEOC issued a notice that its efforts to conciliate the Charge had been unsuccessful.

10.    On May 19, 2025, the EEOC issued a Conciliation Failure and Notice of Rights advising that "The EEOC found reasonable cause to believe that violations of the statue(s) occurred with respect to some or all matters alleged in the charge but could not obtain a settlement with the [Defendant] which would provide relief for [Plaintiff]," further advising Plaintiff of his right to file a lawsuit against Defendant on the Charge within ninety (90) days thereof.

11.    Plaintiff filed the instant matter within the aforementioned ninety (90) day time period.

12.    Plaintiff has therefore exhausted his administrative remedies and has complied with all conditions precedent to maintaining this action.

13.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

14.    This Court has supplemental jurisdiction over Plaintiff's state law claims because those claims arise out of the same nucleus of operative fact as his federal claims.

15.    The venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as the Defendant conducted sustained business operations within this district during the time period

applicable to this matter, and the unlawful practices of which Plaintiff is complaining were committed in this district.

## FACTUAL ALLEGATIONS

16.    Paragraphs 1 through 15 are hereby incorporated by reference as though the same were fully set forth at length herein.

17.    On or around January 5, 2024, Plaintiff applied for a Delivery Driver position with Defendant, a Delivery Service Provider for Amazon

18.    Plaintiff was contacted by Defendant's HR Manager, Miriam Karina Albino ("Ms. Albino"), who scheduled him for an interview for January 8, 2024 at what would have been his work location at the Amazon warehouse at 3025 Meeting House Road in Philadelphia, PA.

19.    On January 8, 2024, Plaintiff met with Ms. Albino for his interview.

20.    During their meeting, Plaintiff and Ms. Albino discussed the job, what Plaintiff would be doing, how much Plaintiff would be making, how Defendant's payroll worked, and the remainder of the screening process, which included a background check and drug screen.

21.    When Plaintiff asked what sort of drug test Defendant uses, Ms. Albino replied that they use a urine test.

22.    At this point, Plaintiff explained to Ms. Albino that he is unable to urinate because he does not have functioning kidneys, having had kidney failure at age two and having been undergoing dialysis since he was approximately eleven or twelve years old.

23.    Ms. Albino responded that Defendant could "probably" work something out as an alternative.

24.    Plaintiff explicitly offered to pay the difference if there was a higher cost for an alternative drug test, such as a blood test.

25.    During the interview, Plaintiff also disclosed that he has to undergo dialysis three times per week, which Plaintiff had scheduled for Monday, Wednesday, and Friday, and that this treatment takes approximately three hours.

26.    Plaintiff assured Ms. Albino that these appointments would not interfere with his Amazon shifts, as Plaintiff was able to change his dialysis appointment schedule to accommodate Defendant's schedule.

27.    Later that day, Plaintiff received email confirmation from Amazon that his background check had been approved.

28.    The following day, January 9, 2024, Ms. Albino texted Plaintiff to let him know that his background check had come back and that she needed to schedule him for a drug test.

29.    On January 10, 2024, Plaintiff called Ms. Albino, having missed her call the previous day.

30.    During this call, Plaintiff again mentioned that he would not be able to take a urinalysis test due to his lack of functioning kidneys, but would be willing to submit to (and even pay the difference for) an alternative drug test.

31.    Ms. Albino responded, "Let me call my boss."

32.    However, just a couple minutes later, Ms. Albino called Plaintiff back and told him that there was "no other way" to do the drug test and that if Plaintiff could not do the urine test, Defendant would have to rescind the job offer.

33.    Plaintiff reiterated that he was more than willing to undergo an alternative test, such as a blood test, but was physically unable to undergo urinalysis, due to his disability.

34.    Despite this, Defendant's decision was firm.

35.    Plaintiff never received any further communications from Defendant.

36.     Upon information and belief, Defendant had a continuing need for the services for which Plaintiff was to be engaged and has since hired a non-disabled individual in his place.

37.     Accordingly, Plaintiff avers that Defendant discriminated against him because of his actual and/or perceived disabilities, failed to accommodate him in the form of an alternative drug test (such as a blood or hair test, which Plaintiff offered to pay for), and terminated him and/or refused to hire him because of his disabilities and/or perceived disabilities and in retaliation for requesting a reasonable accommodation in connection thereto, in violation of the ADA, PHRA, and PFPO.

38.     As a direct result of Defendant's willful and discriminatory actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, promotion benefits, earnings and earnings potential, loss of health and retirement benefits, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to his professional reputation.

**COUNT I**
**AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12101, *et seq.***
**<u>DISCRIMINATION AND RETALIATION</u>**

39.     Paragraphs 1 through 38 are hereby incorporated by reference as though the same were fully set forth at length herein.

40.     At all times relevant hereto, Plaintiff was an employee within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

41.     At all times relevant hereto, Defendant had at least fifteen (15) employees.

42.     Plaintiff is a qualified individual with a disability within the meaning of the ADA.

43.     Plaintiff's disabilities substantially limit/limited Plaintiff in one or more major life activities and/or major bodily function as described above.

44.     Defendant was aware of Plaintiff's disabilities and/or regarded Plaintiff as being disabled.

45.     By reason of the foregoing, Defendant, through its agents, officers, servants, and/or employees, has violated the ADA by terminating Plaintiff, rescinding his offer of employment, and/or refusing to hire Plaintiff on account of his disabilities, for his past record of impairment, because it regarded him as being disabled, and/or in retaliation for plaintiff's request(s) for a reasonable accommodation in connection thereto.

46.     Defendant also failed to engage in the interactive process with Plaintiff despite Plaintiff's requests for a reasonable accommodation.

47.     As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, earnings potential, raises, and other significant economic benefits, along with emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE,** as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

A.     Back wages, front pay, and bonuses in an amount to be determined at trial;

B.     Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C.     Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this matter;

D.     Pre-judgment interest in an appropriate amount;

E.      Such other and further relief as is just and equitable under the circumstances; and

F.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable federal law.

## COUNT II
## THE PENNSYLVANIA HUMAN RELATIONS ACT
## 43 P.S. § 951, *ET SEQ.*
## DISABILITY DISCRIMINATION AND RETALIATION

48.     Paragraphs 1 through 47 are hereby incorporated by reference, as though the same were fully set forth at length herein.

49.     At all times relevant hereto, Defendant has employed four (4) or more employees within the Commonwealth of Pennsylvania.

50.     Defendant is a covered employer for purposes of the PHRA.

51.     Plaintiff is a qualified individual with a disability within the meaning of the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*

52.     As described above, Plaintiff's disabilities substantially limit/limited him in one or more major life activities and/or major bodily functions.

53.     Defendant was aware of Plaintiff's disabilities and/or regarded Plaintiff as being disabled.

54.     It is believed and therefore averred that Defendant terminated Plaintiff's employment, rescinded his offer of employment, and/or refused to hire him on the basis of his actual and/or perceived disabilities, for his past record of impairment, and/or because it regarded him as being disabled.

55.     Defendant retaliated against Plaintiff for his request(s) to be reasonably accommodated.

8

56.    As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress, and humiliation.

57.    The conduct described above constitutes a violation of the Pennsylvania Human Relations Act, 43 P.S. § 955, *et seq.*, and affords Plaintiff the opportunity to seek any and all remedies available under said Act.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

A.    Back wages, front pay, and bonuses in an amount to be determined at trial;

B.    Compensatory damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C.    Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this action;

D.    Pre-judgment interest in an appropriate amount; and

E.    Such other and further relief as is just and equitable under the circumstances;

F.    Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## COUNT III
## PHILADELPHIA FAIR PRACTICES ORDINANCE
### Phila. Code §§ 9-1101, *et seq.*
### DISABILITY DISCRIMINATION & RETALIATION

58.    Paragraphs 1 through 57 are hereby incorporated by reference as though the same were fully set forth at length herein.

9

59.     Defendant interviewed Plaintiff for employment within the City of Philadelphia, where Defendant employs other individuals.

60.     The aforementioned violations of the ADA and PHRA described above also constitute violations of the PFPO, and afford Plaintiff the opportunity to seek any and all remedies available under said Ordinance.

61.     As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

A.     Back wages and front pay, in an amount to be determined at trial;

B.     Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, willful, negligent, wanton, and/or malicious conduct;

C.     Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this matter;

D.     Pre-judgment interest in an appropriate amount; and

E.     Such other and further relief as is just and equitable under the circumstances

## <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury as to all issues so triable.

10

Respectfully submitted


**MURPHY LAW GROUP, LLC**


By: /s/ Michael Groh
    Michael Groh, Esquire
    Michael Murphy, Esquire
    Eight Penn Center, Suite 2000
    1628 John F. Kennedy Blvd.
    Philadelphia, PA 19103
    TEL: 267-273-1054
    FAX: 215-525-021
    mgroh@phillyemploymentlawyer.com
    murphy@phillyemploymentlawyer.com
    *Attorney for Plaintiff*

Dated:  June 6, 2025

## <u>DEMAND TO PRESERVE EVIDENCE</u>

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to his potential claims and his claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.